KENTUCKY STATE BAR ASSOCIA-
TION, Complainant,

v.

Duane Lee VINCENT, Respondent.

Supreme Court of Kentucky.

April 30, 1976.

Carroll M. Redford, Sr., Glasgow, Leslie G. Whitmer, Director, Kentucky State Bar Ass'n, Frankfort, for complainant.

Hugh O. Skees, Raymond R. Vincent, Dale T. Wilson, Vincent & Skees, Florence, for respondent.

PER CURIAM.

This is a disciplinary proceeding against Duane Lee Vincent. On March 1, 1974, respondent was charged by an information filed in the United States District Court for the Eastern District of Kentucky with three counts of wilfully and knowingly failing to make income tax returns for the years 1968, 1969 and 1970. 26 U.S.C.S. Sec. 7203. On July 31, 1974, pursuant to a plea of guilty to one count, respondent was sentenced to prison for 12 months. The remaining two counts were dismissed.

These proceedings originally were commenced on August 21, 1974, under the current RCA 3.320, which was not in effect at the time of the commission of the offense (April 15, 1971), to which the respondent pled guilty. The Court of Appeals rule which was in effect at that time was RCA 3.330. On motion of the petitioner and the respondent, the action was remanded, on January 15, 1975, to the Board of Governors of the Kentucky Bar Association for proceedings under the terms and conditions of RCA 3.330.

On January 29, 1975, the then president of the Kentucky Bar Association filed a new charge for disciplinary proceedings against the respondent, pursuant to the provisions of RCA 3.140. It is alleged that said conduct of the respondent "constitutes un-

ethical and/or unprofessional conduct and the same is calculated to bring the bench and bar of the Commonwealth of Kentucky into disrepute." On February 21, 1975, respondent filed an answer which constitutes a general traverse; states that the severity of the sentence has been appealed to the United States Court of Appeals for the Sixth Circuit and that these proceedings should be dismissed or at least deferred until the appeal has been finally adjudicated; denies that on April 15, 1971, there was any provision of the laws of Kentucky for the disbarment of an attorney solely on the basis of a criminal conviction; and says that the offense charged is not a serious misdemeanor and did not involve dishonesty or stealing.

Evidentiary hearings were held by the trial committee on April 25, 1975, and on May 22, 1975. As a preface to and at the time of the first hearing, inquiry was made by counsel for the respondent as to which rule the proceedings were under. They were, thereupon, advised that the proceedings were under RCA 3.140, to which procedure respondent objected.

RCA 3.140 and RCA 3.330 were both in effect at the time of the commission of the offense. RCA 3.140 was directed at proceedings against an attorney who may have been guilty of unprofessional conduct. RCA 3.330 was directed at proceedings against an attorney who had been convicted of a criminal offense involving moral turpitude.

Respondent challenges the right of complainant to proceed against him under RCA 3.140, since the action had been remanded for proceedings under RCA 3.330.

From 1948 until July 2, 1971, there was no provision in our law for disbarment of an attorney solely on the basis of criminal conduct per se. *Kentucky State Bar Association v. Taylor*, Ky., 516 S.W.2d 871, 872. Thus, our RCA 3.330 and RCA 3.140 were the only rules, at the time the offense was committed, which provided for disciplinary proceedings. The provisions of one are not inconsistent with the other, but each is complementary to the other. The

Board elected to proceed under the latter rule and no prejudice has been charged or shown to exist by reason of that action. The remand for proceedings under RCA 3.330 was not a denial of the right of the Board to proceed under RCA 3.140.

Respondent charges that the offense of which he was convicted is not one involving moral turpitude.

Beginning with the case of *Kentucky State Bar Association v. McAfee,* Ky., 301 S.W.2d 899, we have held that a conviction for failing to file a federal income tax return does not involve moral turpitude. Even though we have held there is no moral turpitude involved in failing to file income tax returns, this conduct is not condoned by this court and we have publicly condemned the practice. *Kentucky State Bar Association v. McAfee,* supra.

This court is advised that respondent's appeal has been dismissed and that at this time he is serving his sentence. His request that this case be held in abeyance until his appeal of his criminal conviction is determined is now moot.

In an effort to present extenuating circumstances attending respondent's position, he was permitted to introduce much testimony and he was permitted to testify freely and at length of and concerning his personal and family-related matters, as well as testify in detail concerning his professional conduct. Respondent is 47 years of age, married, and has four children, one of whom is chronically ill. He has been in the active, general practice of law since September, 1964, and for many years served as counsel to the Boone County Planning Commission. Respondent states that he did not realize the severity of failing to file tax returns; that he has cooperated completely with agents of the Internal Revenue Service; that he had no intention of defrauding the United States Government; that all tax returns for the three questioned years, all years prior thereto, and all subsequent years have been duly filed; and that all taxes, penalties, and interest have been duly paid. Respondent produced several witnesses whose testimony corroborated re-

spondent's regarding his personal concern for, his devotion of time to, and money spent on his seriously ill son, and they gave respondent a characterization of honesty, integrity, and high respected legal ability. Each witness expressed that in his opinion respondent's conduct did not lower his opinion of lawyers in general or of his opinion of respondent. At the commencement of the hearing respondent's counsel made this statement:

"By way of opening statement then, our case will be that we can't deny that the tax return was not filed. We wish to present circumstances which we feel will be in mitigation. We also wish to have the Committee consider the fact as to the state of the law at the time this offense was committed in making its recommendation. That is our statement."

The trial committee filed a minority and a majority report. The majority report found that Vincent's conviction was of a crime that involved moral turpitude; that the offense constituted unprofessional and/or unethical conduct; and that he should receive a public reprimand. The minority report found that the offense did not involve moral turpitude; that his conduct was calculated to bring the bench and bar into disrepute; and that he should receive a private reprimand. However, the Board of Governors did not adopt either the majority or the minority report. It found that Vincent was guilty of unprofessional and/or unethical conduct by having committed an infamous crime, and it recommended a six-month suspension from the practice of law.

■ We have long extended the arm of patience and understanding to members of our legal profession when they have been subjected to disciplinary proceedings. It may be that we have defined the limits of conduct too broadly in speaking in subjective terms such as "conviction of an offense involving moral turpitude or of being convicted of a serious misdemeanor or a felony." In any event, the real criterion is and should be whether the attorney is guilty of such unprofessional and unethical conduct which is calculated to bring the bench and bar into disrepute. It is beyond cavil that an attorney who is convicted of an offense involving moral turpitude, or who is convicted of an intentional and serious misdemeanor, or who is convicted of a felony, is guilty of such conduct as is calculated to bring the bench and bar into disrepute. Respondent was permitted, without limitation, to fully indulge himself in the introduction of evidence to support his position in his effort to build up and make realistic his claim of extenuating circumstances. He is an officer of the court (*Kentucky State Bar Association v. Taylor,* Ky., 482 S.W.2d 574), and it is his duty—yes, even more so, it is his responsibility—to conduct his personal and professional life in a manner as to be above reproach. Is this too much to ask of any attorney? We think not. Other than one's own confidante, no person occupies such close relationship to the general public as do the members of the legal profession. It is the attorney to whom the intimacies of family relations are confided; it is the attorney who is entrusted with advising as to the management and disposition of the family estate; it is the attorney who is entrusted with the protection of our constitutional and statutory rights. Such a burden resting upon the members of the legal profession must not be taken lightly.

" * * * that you will faithfully execute, to the best of your ability, the office of attorney at law * * * " are not idle words, to which all attorneys have pledged their allegiance. The conduct of even one attorney which would embarrass the legal profession will not be tolerated.

■ While we do not find that the conduct of respondent constituted an infamous crime, as found by the Board of Governors, we do conclude that the respondent's conduct constituted unethical and unprofessional conduct. (63 A.L.R.3d 512, § 4).

The recommendations of the Board of Governors are accepted. The respondent is suspended from the practice of law for a period of six (6) months.

All concur, except REED, C. J., who concurs in result only.